UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ISSAC DECRAIS HARRIS #447304,

    Plaintiff,

v.

THOMAS RUPRECHT, et al.,

    Defendants.
_____/

Case No. 2:19-cv-00121

Hon. Gordon J. Quist
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment (ECF No. 18) and Plaintiff's "motion in support of affidavit of perjury" (ECF No. 27).

State prisoner Issac Decrais Harris filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 24, 2019. (ECF No. 1.) Harris alleges in his verified complaint that he was denied proper dental treatment, pain medication, and a liquid diet, in violation of his rights under the Eighth Amendment. Harris alleges that the defendants – Dr. Ruprecht, DDS, and Dental Assistant (DA) Sadak – refused to provide pain medication and a liquid diet, which resulted in continued pain, suffering, and emotional distress. Harris also alleges that Dr. Ruprecht and DA Sadak retaliated against him because he had previously filed grievances, in

violation of the First Amendment. He also sues Dr. Ruprecht for the state law tort of assault and battery.

The events in this case took place at the Alger Correctional Facility (LMF) in the fall of 2017.

The undersigned respectfully recommends that the Court grant summary judgment in favor of Dr. Ruprecht and DA Sadak on Harris's Eighth Amendment and First Amendment claims and decline to exercise supplemental jurisdiction over Harris's state law claim. (ECF No 18.) In addition, the undersigned recommends that the Court deny Plaintiff's "motion in support of affidavit of perjury." (ECF No. 27.)

**II. Factual Allegations**

Harris alleges that he had a dental appointment on September 25, 2017. He says that during the appointment it was determined that he would need to have two teeth removed. Harris's complaint refers to these extractions as Extractions 1 & 13. (ECF No. 1, PageID.3-4.) He also says that, on the same day, Dr. Allen, DDS, prescribed Clindamycin, Ibuprofen, and Tylenol to treat his pain. (*Id.*)

Three days later, on September 28, 2017, Harris went to another dental appointment. On this occasion, Ruprecht and Sadak removed Harris's right wisdom tooth (Extraction #1). (*Id.*, PageID.4.) Harris says that during the procedure, the power in the prison went out. (*Id.*) He says that he told Ruprecht and Sadak that he wanted them to wait for the power to come back on before continuing the procedure. (*Id.*, PageID.5.) Ruprecht and Sadak decided to continue the tooth

extraction anyway. Harris says that Defendants had a Corrections Officer (CO) hold a flashlight above Harris's mouth, then completed the extraction. (*Id.*) Defendant Ruprecht then gave Harris a prescription for 20 Ibuprofen pills. (ECF No. 1, PageID.5.) Harris returned the next day after complaining about significant bleeding. (*Id.*) Harris says that Ruprecht and Sadak then removed a blood clot from Harris's mouth and placed gauze on the extraction site. (*Id.*)

Harris says that, on September 30, 2017, he filed a grievance relating to the aforementioned dental care. (*Id.*, PageID.6.) Harris also says that he asked for a liquid diet. According to Harris, his grievance was denied because any post-operation problems were not caused by the power outage and a liquid diet was found to be not medically necessary. (*Id.*)

Harris says his pain and bleeding continued for several days. (*Id.*) Harris was seen by Ruprecht and Sadak on October 4, 2017. (*Id.*) Harris alleges that, on October 4, he again requested pain medication and a liquid diet, but those requests were denied. (*Id.*)

Harris alleges that he sent a request for pain pills on October 6, 2017. (ECF No. 1, PageID.7.) He received a response from a non-defendant nurse on October 8, 2017. He says he was told that he did not have a current prescription. (*Id.*)

Harris then filed another grievance on October 9, 2017, stating the denial of his requests for a liquid diet and pain pills was retaliation by the Defendants for the first grievance he filed against them. (*Id.*)

That same day, Harris developed another blood clot, which was removed by a nurse. (*Id.*)

Ruprecht and Sadak saw Harris on October 13, 2021, when he came back in for his second extraction (Extraction #13). (*Id.*) Harris's second tooth was finally extracted on October 19, 2017. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Eighth Amendment

Harris alleges that Dr. Ruprecht and DA Sadak acted with deliberate indifference to his serious medical needs. The Eighth Amendment prohibits the

infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that **delay in medical treatment** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's **failure to treat a condition**

- 5 -

> *adequately*, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff

> must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical

> condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.

1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The record establishes that Harris received extensive post-operative dental treatment from Dr. Ruprecht and DA Sadak, as well as from non-defendant nurses at LMF, and even from another on-call dentist at LMF. Harris was evaluated often, including whenever he requested treatment. (ECF No. 19-7, PageID.139-146.) When Harris indicated that he was in pain, Defendant Dr. Ruprecht, or another on-call dentist, ordered Ibuprofen to help with pain management. When Harris indicated excessive bleeding around the extraction site, Dr. Ruprecht and Sadak, or other healthcare professionals at LMF, removed the blood clot and redressed the extraction site with gauze.

Harris alleges that Dr. Ruprecht and DA Sadak refused to prescribe pain pills after he filed a grievance and contends that not having a liquid diet caused him injury. Harris offers no verified medical evidence to support his claims that Defendants acted with deliberate indifference to his serious medical needs or that the failure to provide additional pain medication and a liquid diet caused injury.

First, DA Sadak did not have the authority to approve a request for a liquid diet. (ECF No. 19-6, PageID.134-136.) Second, each time Harris made a request for a liquid diet or for pain medication, she passed along his request to either Dr. Ruprecht or the on-call dentist. (*Id.*) In addition, Defendant Dr. Ruprecht provided Harris with pain medication. (ECF No. 19-2.) On September 13, 2017, before he had a tooth extracted, Harris was provided with over-the-counter pain medication, and 21 Clindamycin pills (an antibiotic). (*Id.*, PageID.101.)

Harris was examined by Dr. Duane Allen on September 25, 2017. (ECF No. 19-7, PageID.140). Dr. Allen provided Harris with 28 Clindamycin pills, 21 (400mg) Ibuprofen pills, and 28 (325mg) Tylenol pills. (*Id.*)

After the first tooth extraction on September 28, 2017, Harris was provided with 20 (200mg) Ibuprofen pills. (*Id.*, PageID.102; ECF No. 19-7, PageID.141.) Dr. Ruprecht attests that he does not recall Harris asking for more pain medication and can think of no reason why he would have denied such a request if Harris had asked for them. (*Id.*) The next day, Dr. Ruprecht examined Harris because he had a large "liver" clot. (*Id.*, PageID.142.) Dr. Ruprecht treated Harris and instructed him to sit or laydown over the next 48 hours. (*Id.*) At his follow-up examination on October 4, 2017, Dr. Ruprecht noted that the bleeding had stopped, and he would follow-up at the next appointment. (*Id.*)

In addition, Dr. Stephen Phillips did a chart review on October 9, 2017, and noted that Harris was seen by a nurse on October 8, 2017. There was no swelling, bleeding or drainage at the extraction site. (ECF No. 19-7, PageID.143.) Dr.

Phillips responded to Harris's request for a liquid diet noting that a special diet was unnecessary because Harris "has enough teeth in his mouth to be able to get through a meal." (*Id.*) Dr. Phillips ordered 20 over the counter Ibuprofen. (*Id.*)

Harris returned to the dental clinic on October 13, 2017, for his second extraction. At that time, Harris asked for a liquid diet and Dr. Ruprecht explained that it was not medically necessary. Dr. Ruprecht noted in the dental record: "good healing, no medical indication for a soft diet." (*Id.*, PageID.144.) Dr. Ruprecht explains that liquid diets are prescribed in cases where a jaw is fractured or wired shut, and he has never prescribed a liquid diet during his 41-year dental career to a patient who had a tooth extracted. (ECF No. 19-2, PageID.103.) Diet is explained to every prisoner as part of post extraction instructions. (*Id.*)

Harris left the clinic upset and the second extraction did not take place that day. (*Id.*)

Harris indicated that, on October 19, 2017, the first removal site had healed, and he wanted the second tooth extracted. (*Id.*, PageID.145.) The second tooth was successfully extracted on October 19, 2017. (*Id.*) Harris was provided with 40 (200mg) Ibuprofen pills. (*Id.*, PageID.145.) Examination on October 26, 2017, indicated normal healing at the second extraction site. (*Id.*)

The subjective component of Harris's claim requires that he show Defendants Ruprecht and Sadak acted with deliberate indifference to Harris's serious medical needs (i.e., with a sufficiently culpable state of mind equal to criminal recklessness). The dental records reveal that Defendants Ruprecht and Sadak responded to

Harris's dental needs, complaints, and pains by examining the extraction site, cleaning it, and replacing the gauze, prescribing pain pills, and providing instructions for proper healing. (ECF No. 19-7, PageID.140-146.) Harris has presented no evidence in the record to indicate that the failure to prescribe a liquid diet posed an excessive risk of harm to him or was medically necessary. Additionally, there is no evidence that suggests Defendants Ruprecht and Sadak were aware of or disregarded any risk of harm to Harris by not prescribing a liquid diet.

In addition, there exists no evidence to show that Harris was ever denied pain medication by Defendants. The evidence establishes that Harris received adequate dental care and treatment and that he received pain medication on multiple occasions between September 13 and October 19, 2017. Based on the evidence in the record, viewed in the light most favorable to Harris, there exists no genuine issue of fact on Harris's claim that Defendants Ruprecht and Sadak acted with deliberate indifference to his serious medical needs.

**V. Retaliation**

Harris alleges that Ruprecht and Sadak retaliated against him for filing a grievance by not prescribing pain medication when requested. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken

against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. The Sixth Circuit has repeatedly held that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)). "If the grievances are frivolous, however, this right is not protected." *Id*. "Abusive or manipulative use of a grievance system [is] not…protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 Fed. App'x. 411, 416 (6th Cir. 2014) (citing *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).

However, the Sixth Circuit has employed a burden-shifting approach:

Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

It is without dispute that filing a grievance is considered protected conduct. However, there is no evidence to support Harris's claims that Defendants took adverse action against him by denying him pain medication. Harris received over-the-counter pain medication on September 13, 2017, 21 Ibuprofen and 28 Tylenol pills on September 25, 2017, 20 Ibuprofen pills after his first tooth extraction on September 28, 2017, 20 Ibuprofen pills on October 9, 2017, and 40 Ibuprofen pills on October 19, 2017. (ECF No. 19-7, PageID.140-145.)

Harris alleges that he was denied pain pills on October 4, 2017; however, there exists no evidence that he was denied pain medication upon request on that date. And more importantly, there exists no evidence that Defendants were made aware of his request for pain medication on that date. Harris then sent a medical kite on October 6, 2017, asking why he was being denied pain medication, which was received and responded to by a non-defendant nurse at LMF. (ECF No. 19-5, PageID.119.) The record shows that whenever DA Sadak received a request by Harris for pain medication, she contacted and forwarded the request to either Dr. Ruprecht or the on-call dentist. Additionally, the record shows that whenever Defendant Dr. Ruprecht was aware Harris needed pain medication he prescribed it. (ECF No. 19-7, PageID.141-145.) Harris offers no evidence that either Defendant took adverse action against him by not prescribing pain pills.

Harris also fails to provide evidence showing that Defendant's failure to approve a liquid diet was motivated by his protected conduct (i.e., filing a grievance). DA Sadak does not have the authority to authorize a liquid diet, so she

could not have retaliated against him by not prescribing one. (ECF No. 19-2, PageID.103.) Additionally, Harris has failed to rebut Dr. Ruprecht's determination that a liquid diet was not medically necessary. The record supports this finding and Dr. Phillips agreed on October 9, 2017, reaching the same conclusion that a special liquid diet was not necessary. (ECF No. 19-7, PageID.143.)

### VI. Official Capacity Claims

To the extent that Harris is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the

extent that Harris seeks money damages from Defendants in their official capacity, that part of his lawsuit is barred by sovereign immunity.

### VII. State Law Claims

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Plaintiff, however, seeks to invoke this Court's supplemental jurisdiction over state-law claims. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

It is respectfully recommended that the Court decline to exercise supplemental jurisdiction over the state law claims.

### VIII. Motion in Support of Perjury

Harris filed a "motion in support of affidavit of prejury." (ECF No. 27.) Harris says that Defendants' assertions that they do not recall Harris asking for a liquid diet are false and the dates asserted in the affidavits are incorrect. (*Id.*,

PageID.227-228.) Defendants have filed a response. (ECF No. 28.) In the opinion of the undersigned, Harris has not established that Defendants made perjurious statements. The medical records support Defendants' affidavits.

## IX. Recommendation

The undersigned respectfully recommends that the Court grant summary judgment in favor of Dr. Ruprecht and DA Sadak on Harris's Eighth Amendment and First Amendment claims and decline to exercise supplemental jurisdiction over Harris's state law claim. (ECF No 18.) In addition, the undersigned recommends that the Court deny Plaintiff's "motion in support of affidavit of perjury." (ECF No. 27.)

If the Court accepts this recommendation, this case will be dismissed.

Dated: July 30, 2021 /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).